**Affirmed and Memorandum Opinion filed July 25, 2017.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00499-CR

---

### EX PARTE ENRIQUE P. GOMEZ

---

**On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause No. 14571-B**

---

## MEMORANDUM OPINION

In this appeal from an order denying a subsequent application for writ of habeas corpus, the issue presented arises from a complaint that trial counsel gave erroneous advice about the immigration consequences of a guilty plea. As explained further below, we find no merit to this issue, and we affirm the habeas court's order.

## BACKGROUND

Appellant pleaded guilty in 2008 to one count of aggravated assault with a deadly weapon. The trial court deferred an adjudication of guilt and placed appellant on community supervision for a period of six years.

At the time of his plea, appellant had been a legal permanent resident of this country for less than five years, and under federal law, his guilty plea constituted a "conviction" that made him subject to removal. In 2012, immigration authorities initiated removal proceedings against appellant, based solely on his guilty plea.

***The Initial Application for Writ of Habeas Corpus.*** Appellant applied for habeas relief in 2012, seeking to set aside his guilty plea under *Padilla v. Kentucky*, 559 U.S. 356 (2010), a case that was decided after appellant had pleaded guilty. In *Padilla*, the United States Supreme Court held that counsel is ineffective if she fails to advise her non-citizen client about the immigration consequences of a guilty plea, or if she gives affirmative misadvice to the client about the immigration consequences of a guilty plea. *Id.* at 370–74.

In his habeas application, appellant relied narrowly on *Padilla*'s omission theory of ineffectiveness, asserting that "he was not advised of the consequences with regard to his immigration status by his criminal defense attorney." However, his evidence was broader in scope than his application. In a supporting affidavit, appellant invoked *Padilla*'s affirmative-misadvice theory of ineffectiveness, attesting that he had been told by his counsel "that if [he] finished probation there would be no immigration problems." And at a live hearing, appellant repeated this claim, testifying that his counsel had told him that if he successfully completed his community supervision, then "the charges against [him] would be dropped and [his] immigration problems would be resolved."

Appellant's trial counsel disputed that claim. Counsel testified that, at the time of the plea, she gave appellant the following admonishment, which also appeared in appellant's plea papers: "If you are not a U.S. citizen, a plea of guilty or nolo contendere may result in your deportation, exclusion from admission to the county [sic] or denial of naturalization under federal law." Counsel also testified that she

informed appellant that she was not an immigration lawyer and "so he would have to consult an attorney that deals in immigration."

The habeas court denied appellant's application, siding with counsel's version of events. In its findings of fact, the habeas court found that appellant had been admonished in writing and in person about the immigration consequences of his plea. The court also found that appellant had received effective assistance of counsel, as judged by the standards that existed at the time the advice was given.

Appellant brought an appeal to our sister court, the First Court of Appeals. Without reaching the merits of appellant's complaint, the First Court affirmed the habeas court's order, having determined that *Padilla* did not apply retroactively. *See Ex parte Gomez*, No. 01-12-00972-CR, 2013 WL 2948323, at *2–3 (Tex. App.— Houston [1st Dist.] June 11, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Chaidez v. United States*, 133 S. Ct. 1103 (2013) and *Ex parte De Los Reyes*, 392 S.W.3d 675 (Tex. Crim. App. 2013)).

***The Subsequent Application for Writ of Habeas Corpus.*** In 2016, appellant sought habeas relief for the second time, seeking to set aside the same guilty plea as before. Unlike his initial application, which was based expressly on the omission theory of ineffectiveness, appellant sought relief in his subsequent application on the affirmative-misadvice theory of ineffectiveness. Appellant explained his argument in this way:

> This case raises the following additional claims and issues that could not have been presented previously because the factual or legal basis for the claim was unavailable on the date the Applicant filed the previous application: 1) there was affirmative misadvice, pursuant to *Ex parte Arjona*, 402 S.W.3d 312 (Tex. App.—Beaumont 2013, no pet.) and *Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008), 2) *State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013) is unconstitutional and should be overruled pursuant to the 14th

Amendment, and 3) this writ of habeas corpus is in essence the equivalent of a direct appeal pursuant to the clearly established precedent of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), which in essence means that there is no retroactivity problem even to a direct application of *Padilla*, and specifically under *Trevino* which extended the specific circumstances of Arizona in *Martinez* to the Texas writ of habeas [corpus].

The State filed a response, but the State did not address the merits of appellant's individual arguments. Instead, the State summarily asserted that relief should be denied because appellant's claims were previously litigated and because appellant had not carried his burden of proof.

The habeas court agreed with the State. In its findings of fact, the habeas court determined that "Applicant fails to raise any new evidence," "All of Applicant's claims have been previously litigated," and "Applicant fails to state sufficient specific facts to support his grounds for relief." The habeas court also reiterated its earlier findings that appellant had been admonished about the immigration consequences of his plea and that he received the effective assistance of counsel.

The habeas court denied appellant's application, and appeal was brought to us.

**ANALYSIS**

In both his initial and subsequent applications, appellant moved for relief under Article 11.072 of the Texas Code of Criminal Procedure. In proceedings under that statute, the habeas judge sits as the sole finder of fact. *See Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016). If the judge's ruling turns on an evaluation of credibility and demeanor, we review that ruling for an abuse of discretion, affording almost total deference to the judge's findings when they are supported by the record. *Id.* If the ruling turns on a pure question of law, or upon a mixed question of law and fact not depending on an evaluation of credibility and demeanor, we

4

review the judge's ruling de novo. *See Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015).

Article 11.072 normally restricts habeas applicants to just "one bite of the apple." *Cf. Ex parte Santana*, 227 S.W.3d 700, 703 (Tex. Crim. App. 2007) (describing Article 11.07, which is similarly worded). However, the statute provides a limited exception for subsequent applications:

> If a subsequent application for a writ of habeas corpus is filed after final disposition of an initial application under this article, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

Tex. Code Crim. Proc. art. 11.072, § 9(a).

Thus, to be entitled to relief under Article 11.072, appellant had the burden of proving that the claims and issues in his subsequent application "have not been and could not have been presented previously in an original application . . . because the factual or legal basis for the claim was unavailable on the date [he] filed the previous application." *Id.*

Appellant does not contend that his subsequent application should have been granted on the basis of new factual developments. At the hearing on the subsequent application, appellant clarified: "So, we don't need to present new testimony. This is just a legal argument. The bases for this writ are legal, not factual."

Article 11.072 defines which sorts of legal bases for relief are appropriate in a subsequent application:

5

> For purposes of Subsection (a), a legal basis of a claim is unavailable on or before a date described by that subsection if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.

Tex. Code Crim. Proc. art. 11.072, § 9(b).

Appellant asserted three "legal" bases in his subsequent application, contending that each was sufficient to satisfy Article 11.072. Those bases were: (1) "there was affirmative misadvice," (2) "*State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013) is unconstitutional," and (3) "this writ of habeas corpus is in essence the equivalent of a direct appeal." We address each of these points in turn.

***Affirmative Misadvice.*** Within a single paragraph, appellant makes two competing points about his claim of affirmative misadvice. First, he says that this claim "was not made and could not have been presented previously" in his initial application. Then, in the very next sentence, appellant says that this claim "did not have to be raised" in his initial application, even though the claim was actually presented at the live hearing on his initial application.

Appellant continues his argument by mentioning that he filed his initial application in 2012, one year before the United States Supreme Court determined that *Padilla* did not apply retroactively. *See Chaidez*, 133 S. Ct. at 1105. Appellant emphasizes that, at the time of his initial application, several intermediate appellate courts in Texas had reached a different determination that *Padilla* should be applied retroactively. *E.g.*, *Ex parte Tanklevskaya*, 361 S.W.3d 86, 95 (Tex. App.—Houston [1st Dist.] 2011), *vacated*, 393 S.W.3d 787 (Tex. Crim. App. 2013) (per curiam). Appellant then posits—without citation to authority—that because these appellate courts had decided that *Padilla* had retroactive effect, he was not required in his

6

initial application to bring a claim based on *Padilla*'s affirmative-misadvice theory of ineffectiveness. Now that he knows that *Padilla* does not have retroactive effect, appellant argues that he must be allowed to bring his claim in a subsequent application, and he cites several court decisions suggesting that affirmative-misadvice complaints may be heard in a collateral attack, even if the guilty plea or conviction occurred before *Padilla* was decided. *E.g.*, *Ex parte Arjona*, 402 S.W.3d 312 (Tex. App.—Beaumont 2013, no pet.).

We have two responses to appellant's argument.

First, the argument cannot be considered because it depends on a factual premise that runs counter to the habeas court's findings of fact. The habeas court found that appellant was admonished about the immigration consequences of his plea and that he received the effective assistance of trial counsel at the time the advice was given. Under our standard of review, we must afford total deference to these findings because they are supported by the record. Accordingly, we cannot indulge an argument that depends on a contrary finding that counsel gave appellant affirmative misadvice.

Second, even if appellant had received affirmative misadvice, the claim of affirmative misadvice was known and available to him at the time of his initial application. Indeed, *Padilla* recognizes that claim, *see* 559 U.S. at 370, and appellant made that claim in his affidavit and live testimony.

Appellant's suggestion that he may nonetheless bring this claim in a subsequent application is not supported by *Arjona* or by the other cases cited in his brief (all of which are from federal courts of appeals, and not binding here). Those cases are inapposite because they did not involve subsequent applications for writs of habeas corpus under Article 11.072. Therefore, even if we were to assume for the sake of argument that a claim of affirmative misadvice could be heard in a collateral

attack of a guilty plea or conviction that became final before *Padilla*, we could not allow that claim to be raised in a subsequent application when it was available at the time of the initial application.

***The* Guerrero *Case*.** Next, appellant turns his focus to *Guerrero*, a case involving a non-citizen defendant, but not involving affirmative misadvice. Affirmative misadvice was not a concern in that case because the defendant had waived his right to counsel, and the issue on appeal was whether that waiver had been voluntary. *See Guerrero*, 400 S.W.3d at 580. In resolving that issue of voluntariness, the Court of Criminal Appeals addressed other matters that touched on federal immigration law. The Court held, for instance, that *Padilla* applied to non-citizen defendants, but not retroactively. *Id.* at 587. The Court also held that, under state law, a guilty plea could result in deferred adjudication and, potentially, a dismissal of the charge, whereas under federal immigration law, the same guilty plea could be treated as a conviction even if the charge was dismissed. *Id.* at 587–88.

Appellant takes issues with these holdings. He suggests that *Guerrero* is unconstitutional because it treats non-citizen defendants differently from "other Texas defendants"—presumably, citizen defendants. He also challenges *Guerrero*'s holding that *Padilla* is not retroactive, contending that the case "is divorced from the policy and federalism considerations that led the U.S. Supreme Court in *Teague* to limit the retroactivity of new rules of constitutional procedures to final state convictions." Based on these points, appellant argues that *Guerrero* should be overruled.

Appellant believes that he should be allowed to challenge *Guerrero* in a subsequent application for writ of habeas corpus because *Guerrero* had not been decided at the time of his initial application. Notwithstanding this point about timing, appellant does not explain how a decision that he believes was incorrectly decided

8

can afford him a "legal basis" to habeas relief within the meaning of Article 11.072. And to the extent that he believed that the habeas court should have overruled *Guerrero*, that court was completely without the power to do so. When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, as it did in *Guerrero*, lower and intermediate courts must adhere to its interpretation under the dictates of vertical stare decisis. *See Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Even on the merits of his challenge, appellant's argument about disparate treatment is unpersuasive. This state does not assess the finality of guilty pleas and convictions differently depending on the citizenship status of the defendant, and appellant has cited no authority to the contrary. Appellant's argument really just appears to be a complaint about federal immigration law, which assesses finality differently from Texas. But that law is determined by Congress, and this proceeding is not the appropriate place to question its wisdom. *See Arizona v. United States*, 567 U.S. 387, 395 (2012) ("The federal power to determine immigration policy is well settled.").

***The Equivalent of a Direct Appeal.*** In his final point, appellant argues that he should be allowed to bring a complaint about affirmative misadvice in a subsequent application, as though it were a direct appeal, citing *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). This argument fails for two reasons.

First, as we mentioned earlier, our standard of review precludes us from considering a claim based on affirmative misadvice because that claim's factual premise is contrary to the habeas court's findings of fact.

Second, neither *Martinez* nor *Trevino* would permit appellant to raise this claim as though his subsequent application were the equivalent of a direct appeal,

because in both of those cases, the United States Supreme Court announced equitable qualifications to a general rule applied in federal habeas courts. The general rule in such federal courts is that attorney error committed in the course of a state habeas proceeding cannot supply cause to excuse a procedural default that occurs during those proceedings, like failing to raise a claim of ineffective assistance of trial counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2064–65 (2017) (summarizing the law before *Martinez* and *Trevino*). In *Martinez*, the Court articulated an exception to this rule where the state requires ineffectiveness claims to be brought in a state habeas proceeding, rather than on direct appeal, and either the state prisoner is not afforded counsel during his state habeas proceeding, or his counsel is ineffective during that habeas proceeding. *See Martinez*, 566 U.S. at 17. In *Trevino*, the Court extended this exception to situations where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *See Trevino*, 133 S. Ct. at 1921.

Contrary to appellant's suggestions, *Martinez* and *Trevino* provide no authority that an applicant in a state habeas proceeding may raise a claim in a subsequent application for writ of habeas corpus that was previously available to him—and actually litigated—at the time of his initial application.

## CONCLUSION

Because appellant has raised no legal bases that can afford him relief, we conclude that the habeas court correctly denied appellant's subsequent application for writ of habeas corpus. The order denying that application is therefore affirmed.

/s/ Tracy Christopher
Justice

Panel consists of Justices Christopher, Busby, and Jewell.

Do Not Publish — Tex. R. App. P. 47.2(b).